UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AQIL K. AL-SHIMARY,

                **Plaintiff,**

        **v.**                                **3:06-CV-1554
                                              (FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**
_____

**APPEARANCES**                              **OF COUNSEL**

**LAW OFFICE OF WAYNE M. CHARIFF**    **WAYNE M. CHARIFF, ESQ.**
1204 Press Building
19 Chenango Street
Binghamton, New York 13901
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **KARLA J. GWINN, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL - REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Aqil K. Al-Shimary brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Currently before this Court are Plaintiff's and Defendant's cross-motions for judgment on the pleadings or, in the alternative, for summary judgment.

## II. BACKGROUND

Plaintiff, then 29, filed applications for SSI and DIB on June 22, 2004.  *See* Administrative Record ("AR") at 58-61, 290-92.  In his disability report, Plaintiff cited IGA neuropathy, a type of kidney disorder, as the condition that limited his ability to work.  *See id*. at 81.  Plaintiff maintained that he had been unable to work since February 23, 2004.  *See id*. at 90.  The Social Security Administration denied Plaintiff's claim on September 23, 2004.  *See id*. at 29.  Plaintiff filed a timely request for a hearing on November 15, 2004.  *See id*. at 35.  The hearing occurred via videoconference on September 20, 2005, in Syracuse, New York before Administrative Law Judge ("ALJ") Michael J. Brounoff.  *See id*. at 298.  Attorney Wayne Chariff represented Plaintiff, who appeared and testified.  *See id*. at 298, 300.  Plaintiff's girlfriend, Julie Karl, and a vocational expert (the "VE"), David Sypher, also appeared and testified.  *See id*. at 298, 336, 342.

ALJ Brounoff considered the case *de novo* and issued a written decision denying Plaintiff's application on December 30, 2005.  *See* AR at 17-25.  In his decision, ALJ Brounoff made the following findings:

> 1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date.
> 2) Plaintiff has the following severe impairments: IGA neuropathy and high blood pressure.
> 3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
> 4) Plaintiff has the residual functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds frequently, sit for at least six hours of an eight-hour workday, stand or walk for at least two hours of an eight-hour workday, use arm or leg controls to push or pull up to twenty pounds occasionally or ten pounds frequently, and climb stairs slowly.
> 5) Plaintiff is unable to perform his past relevant work.
> 6) Plaintiff was born on September 22, 1974, and was twenty-nine on the alleged disability onset date; he meets the definition of a younger individual, which here, is defined as under age fifty.
> 7) Plaintiff does not have transferrable job skills.
> 8) Based on his RFC, Plaintiff is capable of performing a significant range of light work.
> 9) Given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
> 10) Plaintiff has not been under a "disability" within the Act's definition of that term at any time through December 30, 2005, the date of the ALJ's decision.

*See id*. at 17-25.

The ALJ's decision became the Commissioner's final decision on or about November 2, 2006, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 6-9.

Plaintiff commenced this action on December 29, 2006, *see* Dkt. No. 1, and filed a supporting brief on December 31, 2007, *see* Dkt. No. 8. Defendant filed a response brief on March 17, 2008. *See* Dkt. No. 13.

### III. DISCUSSION

**A.     Standard of Review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

To be eligible for SSI and DIB, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in substantial gainful activity, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, he is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform his past relevant work, the ALJ

> determines if he can perform other work, in light of his residual
> functional capacity, age, education, and experience. *See* 20 C.F.R.
> § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R.
> § 416.920(g). A claimant is only entitled to receive disability benefits
> if he cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *See Balsamo v. Chater* 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

## B.     The ALJ's assessment of medical opinions

When assessing the opinions of a claimant's physicians, an ALJ must give controlling weight to the opinion of a treating physician where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Audi v. Astrue*, No. 07-CV-1220, 2009 WL 3199481, *13 (N.D.N.Y. Sept. 30, 2009) (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)); *see also* 20 C.F.R. § 404.1527(d)(2). However, "'the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts[.]'" *Arruda v. Comm'r of Soc. Sec.*, 363 Fed. Appx. 93, 95 (2d Cir. 2010) (quotation omitted).[1] If an ALJ does not give controlling weight to a treating physician's opinion, he must "'give good reasons'" for not doing so. *See Audi*, 2009 WL 3199481, at *13 (quotation omitted). In such cases, the ALJ should consider "'(i) the frequency of examination and

---

[1] In addition, where the treating physician's report states an opinion as to whether a claimant has a disability, the ALJ need only consider such an opinion along with other evidence in making his decision as to whether the claimant is disabled. *See* Social Security Ruling ("SSR") 96-5p, *5. This decision is the ALJ's alone. *See* 20 CFR § 404.1526(e).

the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.'" *Id.* (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009) (quoting *Clark v. Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998))); *see also* 20 C.F.R. § 404.1527(d)(2).[2]

In this case, Plaintiff's treating medical source was Dr. Kevin O'Brien, a nephrologist, who issued reports on April 30, 2004, March 21, 2005, and September 29, 2005. *See* AR at 237-38, 252-56, 287-88. In his April 2004 report, Dr. O'Brien stated that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, could sit for six hours and stand or walk for two hours in an eight-hour workday, and could operate arm or leg controls. *See* AR at 238. In this report, Dr. O'Brien discouraged climbing and indicated that Plaintiff's condition caused weakness, swelling, and loss of muscle mass. *See* AR at 237-38. In his March 21, 2005 report, Dr. O'Brien stated that Plaintiff could not perform even low stress jobs, that he could sit and stand or walk for less than two hours each out of an eight-hour workday, that he would require a thirty-minute break from work every fifteen minutes, and that he would likely miss work more than four times per month due to his renal condition. *See* AR at 252-55. Finally, in his September 29, 2005 report, Dr. O'Brien stated that Plaintiff's chronic swelling made it difficult for him to walk or close his hands and that, given the chronic nature of Plaintiff's disease, he would eventually suffer from progressive kidney disease, which might result in the need for a transplant. *See* AR at 287.

---

[2] In addition, where an ALJ finds against the claimant, he must set forth the specific reasons for the weight he assigned to a treating source's opinion. *See* SSR 96-2p, *5; *see also Lunan v. Apfel*, No. 98-CV-1942, 2000 WL 287988, *5 (N.D.N.Y. Mar. 10, 2000) (holding that remand was necessary because the ALJ did not discuss the weight he assigned or the reasons for assigning such weight to treating source opinions as 20 C.F.R. § 404.1527(d) requires).

The ALJ did not give controlling weight to any one of Dr. O'Brien's reports, and he did not err when he gave substantial weight to Dr. O'Brien's April 30, 2004 medical assessment. *See* AR at 22. This is because Dr. O'Brien was a treating source, substantial evidence supported his April 30, 2004 assessment, and that assessment was consistent with multiple sources in the record.[3]

Finally, it is worth noting that the ALJ also had good reasons for the weight he accorded Dr. O'Brien's April 30, 2004 assessment, consistent with the considerations of 20 C.F.R. § 404.1527(d)(2): (1) plaintiff treated with Dr. O'Brien for nearly two years; (2) of all of Dr. O'Brien's assessments of Plaintiff, his April 30, 2004 report found the most support in the record; (3) this evaluation is consistent with the record as a whole; and (4), as a nephrologist, Dr. O'Brien is a medical specialist. *See generally* AR.

In sum, since substantial evidence in the record supports the weight that the ALJ assigned to the medical opinions in the record and because the ALJ gave good reasons for his assignments of weight, the Court finds that the ALJ did not err in assessing the medical opinions in this case.

**C.    Plaintiff's credibility**

---

[3] These consistent sources include the opinion of Dr. Datta, a consultative physician, who stated that Plaintiff had no limitation with speech, vision, or hearing; no limitations with upper extremities for fine and gross motor activities; and mild limitations for prolonged sitting, standing, walking, and climbing. *See* AR at 227. Dr. Datta also found that Plaintiff should avoid heavy lifting, carrying and bending. *See id*. The State Agency doctor's findings were also consistent with Dr. O'Brien's April 30, 2004 opinion. He found that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently and had no limitation in his ability to operate hand and foot controls. *See id*. at 230. Plaintiff's hearing testimony corroborated Dr. O'Brien's April 30, 2004 assessment as well. Plaintiff indicated that he could lift and play with his approximately twenty-pound child, perform housework, shop, drive, pick up objects that are around thirty pounds, and manipulate objects with his hands. *See id*. at 324-28.

When assessing a claimant's credibility, the ALJ must consider both his medical records and his reported symptoms. *See* 20 C.F.R. § 404.1529. A claimant's statements about his condition, on their own, are not enough to establish disability. *See id.*; *see also* SSR 96-7p, *1. A claimant's complaints of pain and limitation are, however, "'entitled to great weight where . . . [they are] supported by objective medical evidence.'" *Futia v. Astrue*, No. 1:06-CV-0961, 2009 WL 425657, *6 (N.D.N.Y. Feb. 19, 2009) (quoting *Simmons v. U.S.R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)).

If a claimant's testimony is not supported by medical evidence, the ALJ employs a two-step process to evaluate a plaintiff's reported symptoms. *See* SSR 96-7p, at *2. First, the ALJ determines if the plaintiff has medically determinable impairments that could produce the alleged symptoms. *See* 20 C.F.R. § 404.1529(a); *see also* SSR 96-7p, at *2. Second, if impairments do exist, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the plaintiff's ability to work. *See* 20 C.F.R. § 404.1529(a); *see also* SSR 96-7p, at *2. In so doing, the ALJ considers (i) claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication the claimant has taken to relieve symptoms; (v) other treatment the claimant has received to relieve symptoms; (vi) any measures the claimant has taken to relieve symptoms; and (vii) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *See* 20 C.F.R. § 416.929(c)(3) (i)-(vii); *see also* SSR 96-7p, at *3.

In addition, where an ALJ assesses a plaintiff's subjective statements of pain in light of medical evidence that indicates that the plaintiff can work and finds that the plaintiff's statements

cannot overcome the medical evidence to the contrary, "there is no need for further articulation by the ALJ regarding the plaintiff's credibility." *Francis v. Astrue*, No. 09-1826, 2010 WL 3432839, *4 (D. Conn. Aug. 30, 2010).

Here, the ALJ determined that substantial objective medical evidence did not support the Plaintiff's subjective statements of limitation; therefore, he employed the two-step credibility-assessment process. *See* SSR 96-7p, at *2. First, the ALJ found that Plaintiff's renal problems could be the source of his pain. *See* AR at 20. Second, the ALJ deemed that Plaintiff's complaints regarding the intensity, persistence, and effects of the pain were inconsistent with his daily activities and with Dr. O'Brien's finding that Plaintiff was in remission. *See id*. at 20-21. Since neither the medical records nor Plaintiff's daily activities supported Plaintiff's statements of limitation, the ALJ concluded that Plaintiff's statements about his limitations were not entirely credible. *See id*.

The ALJ used the correct procedure to evaluate Plaintiff's subjective complaints in light of medical evidence that indicated that Plaintiff could work. Therefore, the ALJ did not need to further address his finding that Plaintiff's statements were less credible in light of contrary medical evidence. Accordingly, the Court finds that the ALJ did not err in assessing the credibility of Plaintiff's subjective statements of limitation.

**D.     Plaintiff's capacity to engage in substantial gainful employment**

When a claimant cannot perform his past relevant work, an ALJ may seek the opinion of a VE regarding which jobs the claimant could perform, often phrased in terms of the capabilities of a hypothetical person in a similar medical situation to the claimant. *See* 20 C.F.R. § 404.1566. Where the ALJ seeks the VE's opinion regarding a hypothetical claimant with limitations that

correspond to the actual claimant's RFC, "[t]he Commissioner may rely on [the] vocational expert's testimony concerning the availability of jobs suited to [the] hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue,* 361 Fed. Appx. 176, 179 (2d Cir. 2010) (citation omitted). However, a VE's testimony will not constitute substantial evidence to support an ALJ's decision where the ALJ relies on a VE's testimony regarding a hypothetical claimant whose limitations do not mirror the actual claimant's. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114-15 (2d Cir. 1981); *see also Gilliam v. Califano*, 620 F.2d 691, 693-94 (8th Cir. 1980) (holding that a VE's testimony was "fatally deficient" where the hypothetical question did not identify all of the claimant's limitations (citations omitted)).

Here, ALJ Brounoff concluded that Plaintiff had the RFC to lift twenty pounds occasionally and ten pounds frequently, sit for at least six hours of an eight-hour workday, stand or walk for at least two hours of an eight-hour workday, use arm or leg controls to push or pull up to twenty pounds occasionally or ten pounds frequently, and climb stairs slowly. *See* AR at 22-23. This RFC draws support from the medical evidence in the record, particularly Dr. O'Brien's April 30, 2004 opinion. *See* AR at 237-38.

Next, the ALJ presented the VE with a hypothetical that contemplated an individual with the same RFC as the one that the ALJ had determined for Plaintiff.[4] *See* AR at 24, 345. The VE opined that this hypothetical person, and thus Plaintiff, could perform the duties of a shipping-and-

---

[4] The hypothetical concerned an individual between the ages of 29 and 30 with a high school education in Iraq and an Associates degree in New York State. *See* AR at 344-45. This person could lift twenty pounds occasionally and ten pounds frequently, could stand or walk for two hours out of an eight-hour workday, could sit for six hours out of an eight-hour workday, and could operate arm and/or leg controls. *See id.* at 345  This person had normal sight and hearing and could stoop, crouch, and climb slowly. *See id.* This person had no mental impairments and normal dexterity. *See id.*

receiving weigher, a taxi dispatcher, or a museum attendant and that these jobs existed in significant numbers in the national economy. *See id.* at 24, 346-47.

The ALJ considered, but did not rely on, two other hypotheticals on which the VE opined. During the hearing, the ALJ asked the VE whether someone with Plaintiff's RFC could still perform light work if his symptoms caused him to miss work more than four times per month. *See* AR at 348. The VE stated that that situation would result in an inability to work. *See id.* Second, Plaintiff's counsel asked the VE whether someone with Plaintiff's RFC and also Plaintiff's claimed side effects from medication could perform light work. *See id.* at 350-53. Again, the VE stated that no suitable work was available for such a person. *See id.* at 353.

The ALJ did not err when he chose not to rely on the VE's answers to the two alternative hypotheticals because both of those hypotheticals included limitations that Plaintiff did not have. *See Aubeuf*, 649 F.2d at 114-15. Instead, the ALJ properly relied on the VE's opinion regarding the hypothetical that the ALJ proposed that correlated with Plaintiff's RFC. As a result, the Court finds that the ALJ did not err when he determined that Plaintiff retained the ability to engage in substantial gainful employment.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the

Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: December 16, 2010
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge